## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**UNITED STATES OF AMERICA,**

vs.                                                          CASE NO.:  4:22-cr-00027-AW-MAF

**SHARON JANET LETTMAN-HICKS,**
    **Defendant.**
_____/

## MOTION FOR SEVERANCE OF DEFENDANTS
## (MISJOINDER)

    **COMES NOW** the Defendant, Sharon Lettman-Hicks, by and through the undersigned counsel pursuant to Rule 8, Federal Rules of Criminal Procedure and files this Motion for Severance of Defendants (Misjoinder), and as grounds therefore would state as follows:

**Facts:**

1) The Defendant, Ms. Sharon Lettman-Hicks, is charged by Indictment with one count of Conspiracy to Commit Wire Fraud (Count 2 of the Indictment) and nineteen substantive counts of Wire Fraud (Counts 3-21 of the Indictment).

2) Ms. Lettman-Hicks has been joined in an Indictment with Andrew Gillum who is alleged to be a co-conspirator and is also charged in Counts 2-21 of the Indictment.

3) The conduct at issue in Counts 2-21 generally avers that Ms. Lettman-Hicks, in concert with Mr. Gillum, sought or obtained money from campaign donors or campaign accounts under purportedly false pretenses and appropriated that money for unlawful purposes.

4) Counts 2-21 are not the issue or subject of this motion.  Count 1 is the issue.

5) Count 1 of the Indictment alleges, in layman's terms, that Mr. Gillum made materially false statements to the FBI on June 14, 2017, during a public corruption investigation in the City of Tallahassee.

6) Mr. Gillum's alleged false statements are related to whether he received any benefit from a company by the name of Southern Pines (an FBI-contrived and created entity to advance the government's corruption investigation) and whether he continued to have contact and communication with Southern Pines after they asked for political favors in exchange for campaign contributions.

7) More specifically, Mr. Gillum denied receiving benefits from Southern Pines where it is alleged that he received a boat ride around the New York City harbor, tickets to the Broadway play *Hamilton*, the cost of accommodations for the trip as well as the costs of meals and drinks.  His alleged denial of further contact with Southern Pines has been deemed false by the government as they allege in the Indictment that he continued to have contact with Southern Pines after they asked for political favors in exchange for a campaign contribution.

8) Importantly, the government knew that Mr. Gillum allegedly made false statements to the FBI on or about **June 14, 2017**.

9) Ms. Lettman-Hicks didn't go on a boat ride with the gentlemen from Southern Pines.  She did not attend a Broadway play with the gentlemen from Southern Pines.  She did not go to New York City at the invitation of the gentlemen from Southern Pines.  She didn't receive free meals, drinks, or accommodations from the gentlemen from Southern Pines.

10) Ms. Lettman-Hicks had absolutely nothing to do with Southern Pines.

11) Southern Pines and the FBI's extensive and likely incredibly expensive investigation was essentially designed to see whether Mr. Gillum was unlawfully taking campaign contributions in exchange for a guarantee of political favors such as business contracts or construction projects.  Theoretically, the government had some information that Mr. Gillum was accepting bribes in the form of campaign contributions for favors before they set out on the path of trying to "catch him."

12) Southern Pines and the FBI's investigation of Mr. Gillum involved a massive number of resources.  This was not simply limited to government money, as it involved government agents in an undercover capacity traveling to places such as New York City, Nashville, and Jacksonville.  It involved the infrastructure of surreptitious recordings of in-person meetings.  The investigation also involved hundreds of hours of recordings of phone calls, messages, conversations, discussions, and further involved interactions with several well-known Tallahassee lobbyists, lawyers, and political operators.  There were government efforts to "back-channel" campaign contributions by hosting and paying for dinners rather than actually donating the money to the campaign.  There also were efforts to get contributions made through lawyers and political action committees in exchange for guarantees on the award of contracts for construction developments and specific tax exemption categories.

13) Try as they might, what precipitated from the foregoing government efforts was/is Count 1. Mr. Gillum allegedly lied by denying he received any benefit from Southern Pines when the government avers that he received a boat ride, tickets to a play—and the government's undercover agents paid for his hotel, meals and drinks.

14) Mr. Gillum admitted to receipt of the aforementioned items as well as his failure to report these items while being subject to a separate administrative proceeding before the Florida Elections Commission.

15) Sharon Lettman-Hicks was not involved in any way, shape, or form with anything related to Southern Pines or any of the FBI's covert investigations and the circumstances mentioned above.  The government takes creative license in their Indictment by claiming in Paragraph 15 that Marcus Gillum (Individual B, the brother of Andrew Gillum) suggested to undercover agents that money should be routed through Ms. Lettman-Hicks and her corporate entity (P&P Communications). That **is not** what Marcus Gillum stated.

16) The government's surreptitious video-recordings in their Nashville hotel suite reveal the agents inquiring repeatedly about how they can donate money to Mr. Gillum's campaign anonymously in order to get a return favor.  Marcus Gillum does not provide the agents with instructions; Marcus Gillum does mention Ms. Lettman-Hicks at some point in the recording as being a campaign "Pitbull" and that she helped Andrew Gillum to victory in his local Tallahassee election, and he even asks if the agents are familiar with her and her good work on behalf of other entities.  But the conversation is a far cry from the government's present efforts to bridge a large ocean between conduct in Count 1 and conduct in the remaining counts.  The government's own recordings of these conversations speak for themselves.  In either event, Ms. Lettman-Hicks is not a party to the conversations nor is there any evidence that she was aware that her name or that of her corporation were being used or discussed.

17) The government takes additional creative license in Paragraph 14 of the Indictment. In this paragraph, Marcus Gillum is alleged to have told the undercover agents that they had

    a "communications company" where the solicited donation could be routed through. The use of the word "communications" is misleading, and, through omission of fact, it allows a reader or listener to incorrectly conclude that this must be P&P Communications which is first mentioned in the next paragraph of the Indictment. It is not. All the discussions between Marcus Gillum and the undercover agents are specifically about routing money through Sean Pittman and his various political action committees, lobbyist organizations, communications firms, etc.

18) Further, it is important to note that on June 1, 2022, Ms. Lettman-Hicks declared her candidacy for the Democratic nomination for the Florida House of Representatives District 8 seat; she was indicted[1] on June 7, 2022—just 77 days prior to the primary election.

19) These dynamics are compounded by the fact that the five-year statute of limitation in Ms. Lettman-Hicks' case was about to expire prior to the government's last-minute indictment on June 7, 2022. Ms. Lettman-Hicks appears to have been ensnared and an unfortunate casualty of the intended target, Andrew Gillum, whose conduct had been known to the government since June 14, 2017.

---

[1] Ms. Lettman-Hicks' indictment came immediately on the heels of Attorney General Merrick Garland's May 25, 2022, memorandum with the subject line "Election Year Sensitivities." This memorandum established or reinforced processes and procedures to be utilized to avoid/prohibit partisan prosecutorial interference in elections or the appearance of such. AG Garland's memo references the 1939 Hatch Act, one that in recent election cycles has taken center stage with focus on Department of Justice investigations into the contestants of the 2016 Clinton/Trump campaign—and the 2020 Biden/Trump campaign. More specifically, while there are considerable questions about the initiation of investigations and prosecutions as well as declinations to prosecute, the Department's policies seem to vary depending on the notoriety of the candidate or the election.

20) In sum, there is/was a massive investigation with a whole cast of characters and conduct that are related to Count 1 of the Indictment but are completely unrelated to any other allegation in the Indictment. None of that has anything to do with Ms. Lettman-Hicks.

**Misjoinder Analysis:**

21) Federal Rule of Criminal Procedure 8(a) reads:

    (a) Joinder of Offenses. The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

22) Rule 8(a), dealing with the joinder of offenses, applies only to prosecutions involving a single defendant and where the case involves more than one defendant, the tests for joinder of counts and defendants is merged in Rule 8(b). *United States v Irizarry*, 341 F.3d 273 (3d Cir. 2003). In *Irizarry*, the Third Circuit noted, "…most courts have held that Rule 8(b) applies exclusively to issues of joinder of multiple defendants and that Rule 8(a) applies only in cases involving a single defendant charged with multiple offenses." *Id*.

23) Federal Rule of Criminal Procedure 8(b) states:

    (b) Joinder of Defendants. The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

24) There is a significant difference in the standards of Rule 8(a) and Rule 8(b). "The critical difference between the two subsections is that Rule 8(a) allows joinder of offenses against a single defendant that 'are of the same or similar character,' even if such offenses do not arise out of the same series of acts or transactions. Under Rule 8(b), offenses may not be joined unless they arise out of a series of acts or transactions, regardless of how similar they may be in character." *United States v. Kopituk*, 690 F.2d 1289, 1312 (11th Cir.1982), *cert. denied*, 463 U.S. 1209, 103 S.Ct. 3542, 77 L.Ed.2d 1391 (1983) *citing* 1 C. Wright, *Federal Practice and Procedure* s 144 (1969).

25) Joinder of multiple defendants is proper only if there is proof of their joint participation in the same act or transaction or series of acts or transactions and, if that proof is lacking, there is no room for exercise of judicial discretion and a court must grant severance. *See U.S. v. Jorgenson*, 451 F.2d 516 (10th Cir. 1971), *certiorari denied* 92 S.Ct. 959, 405 U.S. 922, 30 L.Ed.2d 793.

26) Trial judges may look beyond the face of the indictment to determine proper joinder in limited circumstances. Where representations made in pretrial documents other than the indictment clarify factual connections between the counts, reference to those documents is permitted. *United States v. McGill*, 964 F.2d 222 (3d Cir. 1992) *citing United States v. Serubo*, 460 F.Supp. 689, 693 (E.D.Pa.1978), vacated on other grounds, 604 F.2d 807 (1979).

27) "Although the remedy for misjoinder and prejudicial joinder is the same, namely, severance and separate trials, the rules are analytically and procedurally distinct: motion for severance based on misjoinder alleges error in the indictment and severance must be granted if the defendants were improperly joined; motion based on prejudicial joinder

comes into play only if joinder was initially proper but joint trial would prejudice one or more defendants." *U.S. v. Williams*, 711 F.2d 748 (6th Cir. 1983), *certiorari denied* 104 S.Ct. 433, 464 U.S. 986, 78 L.Ed.2d 365.

28) In the instant case, none of the facts, testimony, evidence or information regarding Southern Pines and the government's undercover efforts to donate money to Andrew Gillum's gubernatorial campaign are related to the conspiracy alleged in Count 2 of the Indictment or any of the remaining counts.

29) In a separate trial for Ms. Lettman-Hicks, most, if not all, of the evidence related to Count 1 of the Indictment would be irrelevant and inadmissible.

30) It is understandable that the government may want to explain "that an ongoing investigation in Tallahassee led investigators to discover and allege what is currently before the jury." It is an altogether different circumstance for the joinder of Mr. Gillum and allegations of his false or misleading statements to the FBI in a completely unrelated matter. Such is certainly a tactical advantage for the government—and an impermissible one because of improper joinder due to the fact that it would allow the government to present a case that contends Mr. Gillum lied back then about something so he must be lying or involved in a lie about this other thing and, most critically to the motion at bar, that since Ms. Lettman-Hicks is involved with this alleged liar, so she must be lying also. The importance of the testimony isn't about boat rides and Broadway plays, but painting Ms. Lettman-Hicks with an inference of guilt for offenses that she in no way, shape, or form had any involvement.

31) At present, Ms. Lettman-Hicks is forced into the circumstance of defending against conduct that is not her own as alleged in Count 1 of the Indictment and has no relation to

the remaining counts. Instructions to a jury limiting the purpose of evidence and its applicability to respective defendants is insufficient. A joint trial effectively shifts the burden of proof to Ms. Lettman-Hicks to disprove her involvement or association with a count alleging false statements by Mr. Gillum outside of the conspiracy alleged in Count 2 and unrelated to other counts. This is particularly true when the government has their facts wrong, forcing Ms. Lettman-Hicks to insert herself and defend a count related solely to Mr. Gillum.

32) Given the foregoing, severance of the defendants should be granted, and Ms. Lettman-Hicks should be afforded a separate trial.

## CERTIFICATE OF COMPLIANCE

The undersigned Counsel certifies, pursuant to Rule 7.1(B), Local Rules, United States District Court for the Northern District of Florida, that he has conferred with Acting United States Attorney Jason Coody and Assistant United States Attorneys Gary Milligan and Andrew Grogan, and the government opposes a severance. Counsel has also conferred with Mr. Marcus on behalf of Mr. Gillum, and they have no objection to a severance. This pleading is 2596 words.

**WHEREFORE**, Ms. Lettman-Hicks requests the entry of an order severing the defendants.

RESPECTFULLY SUBMITTED,

/s/ *ROBERT A. MORRIS*
ROBERT A. MORRIS, ESQUIRE
Florida Bar No.: 0144680
The Law Offices of Robert A. Morris, LLC
911 East Park Avenue
Tallahassee, Florida 32301
(850) 792-1111 Facsimile (850) 792-1113
alex@ramlawyer.com
efiling@ramlawyer.com


/s/ *MUTAQEE AKBAR*
MUTAQEE AKBAR, ESQUIRE
Florida Bar No.: 819581
Akbar Law Firm, P.A.
P.O. Box 10143
Tallahassee, FL 32302
Phone: (850) 383-0000
Fax: (850) 561-6900
m.akbar@akbarlawfirm.com

Attorneys for Defendant

**CERTIFICATE OF SERVICE**

    **I HEREBY CERTIFY** that a copy hereof has been furnished by Electronic Mail to: Gary Milligan, DOJ-USAO at gary.milligan@usdoj.gov, Andrew Grogan, DOJ-USAO at andrew.grogan@usdoj.gov, Stephen Kunz, Assistant United States Attorney, at stephen.kunz@usdoj.gov United States Attorney's Office, 111 N. Adams Street, Tallahassee, Florida 32301 and David Oscar Markus at dmarkus@markuslaw.com and Todd C. Yoder at tyoder@markuslaw.comast.com on this 14th day of October, 2022.

                                                       RESPECTFULLY SUBMITTED,

                                                       /s/ *Robert A. Morris*
                                                       ROBERT A. MORRIS, ESQUIRE
                                                       The Law Offices of Robert A. Morris, LLC
                                                       Florida Bar No. 0144680
                                                       911 East Park Avenue
                                                       Tallahassee, Florida 32301
                                                       (850) 792-1111 Facsimile (850) 792-1113
                                                       ATTORNEY FOR DEFENDANT
                                                       alex@ramlawyer.com
                                                       efiling@ramlawyer.com